UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DENISE BAEZ,<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Criminal No. 26cr10131<br><br>Violations:<br><br>Counts One-Two: Wire Fraud; Aiding and Abetting<br>(18 U.S.C. §§ 1343 and 2)<br><br>Wire Fraud Forfeiture Allegation:<br>(18 U.S.C. § 981(a)(1)(C) and<br>28 U.S.C. § 2461(c)) |

INFORMATION

At all times relevant to this Information:

General Allegations

A.    Relevant Individuals and Entities

1.    Defendant, DENISE BAEZ ("BAEZ") was a resident of Brockton, Massachusetts.

2.    From August 2021 through the present, BAEZ was a full-time employee of the United States Department of Veterans Affairs ("VA") working as a Medical Technician.

3.    Harvest Small Business Finance, LLC ("Harvest Finance") was a non-bank lending institution headquartered in California.  Harvest Finance participated as a lender in a program referred to as the Paycheck Protection Program ("PPP") operated by the United States Small Business Administration ("SBA").  As a PPP lender, Harvest Finance was authorized to lend funds to eligible borrowers under the terms of the PPP.

4.    East West Bank was a federally insured financial institution based in California.

5.    Stride Bank, N.A. was a federally insured financial institution based in Oklahoma.

6.     The SBA was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses.  The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.  As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

B.     CARES Act Unemployment Benefits

7.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through the PPP.

8.     To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business.  The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  In the PPP loan application, the small business (through its authorized representative) was required to state, among other things, its gross annual income.  These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.  In addition, businesses applying for a PPP loan were required to provide documentation showing their gross income.

9.     A PPP loan application was processed by a participating lender.  If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies,

which were guaranteed by the Small Business Administration ("SBA").  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.  This information was material to the participating lender and the SBA with respect to their respective decisions to fund and approve PPP loans.

10.    PPP loan proceeds were required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities.  Under the applicable PPP rules and guidance, the interest and principal on the PPP loan is eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

Scheme to Defraud

11.    From in or about April 2021 through in or about September 2021, BAEZ devised a scheme to submit materially false PPP loan applications.  In total, BAEZ received $41,666 in PPP loan funds to which she was not entitled.

A.    First Draw PPP Loan

12.    On or about April 4, 2021, BAEZ submitted an application to Harvest Finance for a First Draw PPP loan.  The application listed the gross income for a sole proprietorship that purportedly made $100,000 in gross income in 2019.  The application sought a PPP loan in the amount of $20,833.

13.    BAEZ submitted materially false tax documents to support her false assertion that she had a sole proprietorship with $100,000 in gross income in 2019, including a false Schedule C tax form.

14.     The PPP loan application was approved by Harvest Finance.  On or about April 9, 2021, East West Bank, at the instruction of Harvest Finance, distributed $20,833 into BAEZ's checking account ending 1631 operated by Stride Bank via an interstate wire.

15.     On or about September 3, 2021, BAEZ submitted a loan forgiveness application for the First Draw PPP loan.

16.     In the PPP Loan Forgiveness Application for the First Draw, BAEZ falsely represented that 100% of the funds from the First Draw PPP Loan were used for payroll.  BAEZ used those funds for other purposes, including personal expenses.

17.     Based on the PPP Loan Forgiveness Application for the First Draw, the SBA forgave the entire PPP loan, plus interest.

B.     Second Draw PPP Loan

18.     On or about April 10, 2021, BAEZ submitted an application to Harvest Finance for a Second Draw PPP loan.   The application listed the gross income for a sole proprietorship that purportedly made $100,000 in gross income in 2019.  The application sought a PPP loan in the amount of $20,833.

19.     BAEZ submitted materially false tax documents to support her false assertion that she had a sole proprietorship with $100,000 in gross income in 2019, including a false Schedule C tax form.

20.     The PPP loan application was approved by Harvest Finance.  On or about April 28, 2021, East West Bank, at the instruction of Harvest Finance, distributed $20,833 into BAEZ's checking account ending 1631 operated by Stride Bank via an interstate wire.

21.     On or about September 3, 2021, BAEZ submitted a loan forgiveness application for the Second Draw PPP loan.

22.    In the PPP Loan Forgiveness Application for the Second Draw, BAEZ falsely represented that 100% of the funds from the Second Draw PPP Loan were used for payroll.  BAEZ used those funds for other purposes, including personal expenses.

23.    Based on the PPP Loan Forgiveness Application for the Second Draw, the SBA forgave the entire PPP loan, plus interest.

COUNTS ONE-TWO
Wire Fraud; Aiding and Abetting
(18 U.S.C. §§ 1343 and 2)

The United States Attorney charges:

24.     The United States Attorney re-alleges and incorporates by reference paragraphs 1-23 of this Information.

25.     From in or about April 2021 through in or about September 2021, in the District of Massachusetts and elsewhere, the defendant,

DENISE BAEZ,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| 1 | April 9, 2021 | Wire transfer of $20,833 to BAEZ's checking account operated by Stride Bank ending 1631 from East West Bank that was processed via servers in Arizona or Nevada and received via servers in Oklahoma. |
| 2 | April 28, 2021 | Wire transfer of $20,833 to BAEZ's checking account operated by Stride Bank ending 1631 from East West Bank that was processed via servers in Arizona or Nevada and received via servers in Oklahoma. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

6

## WIRE FRAUD FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The United States Attorney further alleges:

26.     Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1343, set forth in Counts One and Two, the defendant,

DENISE BAEZ,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.  The property to be forfeited includes, but is not limited to, the following asset:

      a.  $41,666 in U.S. currency, to be entered in the form of a forfeiture money judgment.

27.     If any of the property described in Paragraph 26, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

      a.  cannot be located upon the exercise of due diligence;

      b.  has been transferred or sold to, or deposited with, a third party;

      c.  has been placed beyond the jurisdiction of the Court;

      d.  has been substantially diminished in value; or

      e.  has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 26 above.

7

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).


                                        LEAH B. FOLEY
                                        United States Attorney


                          By:   /s/ Brian J. Sullivan
                                        Brian J. Sullivan
                                        Assistant United States Attorney


Date:  April 27, 2026